326 So.2d 589 (1976)
L. JOHNSON et al., Plaintiffs-Appellants,
v.
LA BOKAY CORPORATION, Defendant-Appellee.
No. 5338.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
Rehearing Denied March 4, 1976.
*590 Gahagan & Gahagan by H. C. Gahagan, Jr., Natchitoches, for plaintiffs-appellants.
Smitherman, Smitherman, Lunn, Hussey & Chastain by John B. Hussey, Shreveport, for defendant-appellee.
Before HOOD, GUIDRY and PETERS, JJ.
HOOD, Judge.
This is a possessory action instituted by the ten surviving children and grandchildren of the late Willie King Johnson and Sudie King Johnson, both deceased, against La Bokay Corporation. Plaintiffs allege that they have been in possession of a 100 acre tract of land in Sabine Parish for more than one year, that their possession has been disturbed by defendant, and that they are entitled to judgment maintaining them in possession and ordering defendant to assert any title it may have to the property within a delay to be fixed by the court.
Defendant La Bokay filed several exceptions, all of which were overruled by the trial court. It then answered, denying that plaintiffs have been in possession of the property. And, it filed a reconventional demand, alleging that it has been in possession *591 of the subject property for more than one year prior to its being disturbed in possession, that "the filing of this suit constitutes a disturbance in law, and the acts of possession of plaintiffs constitute a disturbance in fact of the possession of La Bokay," and that defendant is entitled to judgment maintaining it in possession and ordering plaintiffs to assert any claim of ownership they may have to the property.
Judgment was rendered by the trial court (1) in favor of L. Johnson, one of the plaintiffs, maintaining him in possession of approximately five acres of the subject property, and directing defendant La Bokay to assert any adverse claims of ownership it may have to that tract within 60 days; (2) in favor of La Bokay, maintaining it in possession of the remaining 95 acres of the subject property, and ordering L. Johnson to assert any adverse claim of ownership he may have to that 95 acres within 60 days; and (3) in favor of La Bokay, and against all defendants other than L. Johnson, rejecting the demands of those plaintiffs, and denying that they are entitled to possession of any part of the subject property. Plaintiffs appealed.
The principal question presented is: Was La Bokay or were some or all of plaintiffs in possession of the 95 acres in dispute here (that is, all of the property affected by this suit except the five acres which the trial court found to be in the possession of L. Johnson) for the one year period provided in LSA-C.C.P. art. 3658?
The property involved in this proceeding is a rectangular shaped tract of land containing 100 acres, located in Sabine Parish. A dirt road runs generally north and south through the center of that property, dividing it so that about 50 acres of the property lie west of the road and 50 acres lie east of it.
Prior to 1948, Willie King Johnson and his wife, Sudie King Johnson, lived in a house which was located on the east 50 acres. Mr. Johnson died in 1948, and his wife died in 1969. They left several children and grandchildren as their surviving heirs. Two of their children, L. Johnson and Iona Johnson, lived in the family home substantially all of their lives, and they have continued to live in it since their mother died in 1969. L. Johnson has possessed the home and the cleared area around it as owner since that time, while Iona Johnson has occupied it as a tenant, having paid rent to L. Johnson for the privilege of staying there.
The residence building in which L. Johnson lives is located in an area which has been cleared of trees and brush, and it is surrounded by a few small out houses, by a fenced in garden area and by some enclosed stock pens or corrals. Johnson has possessed and used those improvements and the cleared area as a home, for raising chickens and some farm animals and for truck farming purposes. The cleared area comprises a total of 5.057 acres, and the judgment appealed from maintains L. Johnson's possession of that cleared area, but of no other part of the original 100 acre tract. Defendant has not appealed, so that part of the judgment which maintains L. Johnson in possession of the above five acre tract will not be disturbed. The principal issue presented here is whether plaintiffs or defendant are entitled to be maintained in possession of the remaining 95 acres of the original tract.
All of the subject property, except the five acre tract occupied by L. Johnson, is wooded, undeveloped land. It is in an "open range" area, there being no stock laws or ordinances affecting it. There are no improvements on the 95 acre tract at issue here, and it has been used largely for grazing cattle and goats and for cutting and harvesting timber.
The record shows that the 100 acre tract was sold to defendant La Bokay by deed dated May 19, 1966, and recorded in the Conveyance Records of Sabine Parish at about that time. The property is correctly *592 described in the deed, so defendant thus has had at least an apparent title to the subject property since that time. The record does not show that any of the plaintiffs, or their ancestors, had an apparent title to the property, so we presume that the possession which they have exercised over this property has been without color of title.
This suit was instituted on September 30, 1971. Plaintiffs alleged in their original petition that they have been in possession of the entire 100 acre tract "for more than one year immediately preceding the filing of this suit," and that defendant is slandering their title by claiming to be the owner of the property by virtue of a deed dated May 19, 1966, and recorded in the Conveyance Records of Sabine Parish.
An answer and reconventional demand was filed by defendant La Bokay on April 10, 1972. In those pleadings La Bokay alleged that it and its predecessors have been in possession of the 100 acre tract for a period in excess of 25 years, and that its possession has been disturbed by plaintiffs.
The trial of the case was concluded on February 14, 1975. On that day, pursuant to an authorization signed by the trial judge, plaintiffs filed a supplemental petition alleging that "beginning in 1954 and continuing through August or September, 1971, the defendant . . . . wrongfully cut and removed timber and pulp wood" from the subject property, and that plaintiffs suffered substantial damages as a result thereof. In that supplemental petition, plaintiffs pray for judgment maintaining them in possession of all of the property and awarding damages to them. Alternatively, they pray that the right to claim damages be reserved to them.
The trial judge concluded that plaintiff Johnson "has possessed the area consisting of approximately 5 acres where the home is located, and that his possession has been quiet and uninterrupted for a period in excess of one year prior to the institution of this suit." He thus rendered judgment maintaining Johnson in possession of those five acres, and ordering defendant to assert any claim of ownership it may have to that tract.
With reference to the remaining 95 acres, the trial judge found that defendant La Bokay "has maintained property lines on the . . . . tract, maintained fire lanes, supervised for timber purposes, and actually cut timber undisturbed for a period in excess of one year immediately preceding the filing of this suit," and that La Bokay thus "possessed said 95 acre tract during the requisite period of time."
LSA-C.C.P. art. 3658 provides:
"To maintain the possessory action the possessor must allege and prove that:
"(1) He had possession of the immovable property or real right at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
"(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of the disturbance."
Article 3660 of the Louisiana Code of Civil Procedure provides, in part, that:
"A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper."
When a person has title to a tract of land and he takes possession of it conformably to that title, his possession of a *593 part of the property described in the title ordinarily will be held to constitute possession of the whole. LSA-C.C. art. 3498; Manson Realty Company v. Plaisance, 196 So.2d 555 (La.App. 4 Cir. 1967); Zeringue v. Blouin, 192 So.2d 838 (La.App. 1 Cir. 1966); Bolding v. Eason Oil Company, 248 La. 269, 178 So.2d 246 (1965). If he does not have an apparent title, however, he ordinarily will be considered as possessing only that part of the property over which he exercises actual, adverse, corporeal possession by enclosures, and his claim will not extend beyond those enclosures. His possession under those circumstances, in order to maintain a possessory action, must be evidenced by an enclosure of some type to definitely fix its limits, or it must be evidenced by some external and public signs sufficient to give notice to the public of the character and extent of the possession. LSA-C.C. art. 3437, 3499-3505; Prevost's Heirs v. Johnson, 9 Mart. (O.S.) 123 (1820); Robertson v. Morgan, 116 So.2d 141 (La.App. 1 Cir. 1959); Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952); Kilchrist v. Conrad, 191 So.2d 705 (La.App. 3 Cir. 1966).
In Hill v. Richey, supra, our Supreme Court said:
"What the court means by `enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof."
The corporeal possession required to support a possessory action is identical to the possession which is required to establish the acquisitive prescription of 30 years. The term "corporeal possession" ordinarily means the actual, physical, open, public, unequivocable, continuous and uninterrupted possession of property with the intent of possessing it as owner. Kilchrist v. Conrad, supra. The acts which must be shown to establish possession are governed to a large extent by the use to which the land is destined or for which it is suitable. The type of possession essential to establish acquisitive prescription, or to maintain a possessory action, for one kind of property may differ from that required for another.
In Ernest Realty Company v. Hunter Company, 189 La. 379, 179 So. 460 (1938), our Supreme Court said:
"It is a well settled and established principle of law that where the legal and rightful owner of a tract of land has actual possession of a part thereof, he is in legal and constructive possession of the whole, except such portion thereof that may be in the actual possession and occupancy, by inclosure or otherwise, of a party claiming either by title under article 3478 or thirty years' adverse possession, article 3499. The reason for the rule is that both cannot have constructive possession."
The evidence introduced in the instant suit, consisting of numerous photographs and documents and the testimony of many witnesses, shows that the boundaries of the five acre tract on which the Johnson home is located is marked by fences, by the cultivation of a garden, by small farming operations and by the clearing away of timber and brush. We think the boundaries of that five acre tract are definite enough to give notice to the public of the fact that Johnson was possessing that tract when this suit was filed, and for more than one year prior to that time.
Johnson testified that he maintained possession of the remaining 95 acres of the subject property in 1971, and prior thereto, by allowing his cattle and goats to *594 graze on it, and by placing four "stobs" (consisting of metal pipes or markers) at each of the four corners of the subject property. A path or a trail exists around the outside perimeter of the property, and he stated that he frequently uses that path or trail. He also testified that his sister occupied a log cabin on the west 50 acres many years ago, and that a well was located near that cabin. No remains of such a cabin or well exist now, although Johnson pointed out to some witnesses a place on the west 50 acres which he says was the location of that cabin.
The evidence shows that some standing fences now exist on the remaining 95 acre tract, and that in addition thereto there are some vestiges or remains of old fences which apparently existed on that property many years ago. There is nothing to indicate that there was ever a fence along some stretches on the boundary of the subject property. In other places, vestiges of fences, or marks on trees indicate that fences did exist many years ago, either along or inside the boundaries. Most of the fences on the remaining 95 acre tract, however, have deteriorated, or disappeared, or have been removed, so that in 1971 the fences which did exist around that tract were not capable of restraining cattle or livestock of any kind. It also would have been impossible at that time to locate the boundaries of the 95 acre tract solely from those fences or vestiges of fences.
Johnson owned some cows and some goats in and prior to 1971, and he permitted them to graze on the 95 acre tract which is at issue here. This is open range territory, however, and since the property was not enclosed there was nothing to prevent him or any other stock owner from permitting cattle to roam or to graze on that property. In our opinion, the fact that he permitted his cattle and goats to graze on this open range property did not constitute an act of possession sufficient to entitle him to maintain a possessory action. Broussard v. Motty, 174 So.2d 246 (La.App. 3 Cir. 1965).
The markers which Johnson placed at each of the four corners of the property were difficult to see or to locate, and we do not feel that the erection of those markers, although an act of possession, was sufficient to give notice to the public that Johnson was possessing all of the property which was within those four corners.
We agree with the trial judge that the evidence fails to show that any of the plaintiffs possessed the remaining 95 acres of the subject property for the period of time required by LSA-C.C.P. art. 3658.
The evidence convinces us, as it did the trial judge, that La Bokay and its predecessor possessed the 95 acre tract at issue here for at least 25 years prior to the time this suit was instituted. They exercised that possession by patrolling and surveying the property, cutting and removing timber from it, plowing fire lanes around and on that property, painting boundary lines around it, and erecting markers at the corners of that tract.
In 1960 La Bokay's predecessor, as a fire preventive measure, plowed a fire lane around the entire boundary of the 100 acre tract, and it also plowed a fire lane around the five acres which were being occupied by the Johnsons. It also did some control burning on the property from time to time thereafter.
Defendant's predecessor also had the property surveyed in 1947, to establish the boundary lines around the 100 acre tract. It then marked the boundary around that entire tract that year by painting white markers on trees. These markers were repainted in 1949, 1955, 1960, and 1965. They were visible in 1971 when this suit was filed, and they were still plainly visible in 1975 when the case was tried. After the property was surveyed, La Bokay's predecessor also had white markers erected *595 at each corner, and it marked trees near each such marker to further locate the corners. All of these markers were plainly visible when the suit was filed and at the time of the trial.
La Bokay and its predecessor cut and removed timber from the property regularly from 1947 up to and including most of the year 1971. In evidence are records kept by defendant showing when the various timber cuttings on that property were made. Plaintiff apparently concedes that timber was cut regularly, because it alleges in its supplemental petition that "beginning in 1954 and continuing through August or September, 1971, the defendant, its agents, servants, employees or assignees wrongfully cut and removed timber and pulpwood" from the subject property.
The evidence shows that during all of the above operations conducted by La Bokay and its predecessor on the subject property, no protest was ever raised by any of the plaintiffs until this suit was filed.
Plaintiffs argue, however, that although defendant cut timber from the subject property in January, July and August, 1971, the evidence indicates that no timber was cut from 1965 until January, 1971. They contend that plaintiffs were in peaceable possession of the property for at least one year between the two last mentioned dates, and that the cutting of timber in January, 1971, constituted a disturbance of that possession.
We find no merit to that argument. One reason is that none of the plaintiffs possessed the 95 acre tract sufficient to support a possessory action during that period. Another is that defendant continued to possess the property from 1966 to January, 1971, despite the fact that no timber was cut and removed from it during that time. The acts of possession exercised by defendant during that period included patrolling the property at least once a year, and "intermittent surveillance" of the property about every six months. A period of about one-half day was required to patrol the property. These acts of possession, coupled with the fact that defendant initially had corporeal possession, it possessed under color of title and its boundary markings and fire lanes remained visible on the property, constituted at least constructive or civil possession during that period.
We agree with the trial judge that defendant La Bokay has had possession of the 95 acre tract which is in dispute here for a period of substantially more than one year prior to the time this suit was instituted. Since defendant possessed by an apparent title, its act of possessing parts of the property constituted possession of the whole, except for the portion thereof which was in the corporeal possession, by enclosure, of L. Johnson. See Ernest Realty Company v. Hunter Company, supra; and Missouri Pacific Railroad Company v. Littleton, 125 So.2d 37 (La.App. 2 Cir. 1960). Defendant La Bokay thus is entitled to the relief sought in its reconventional demand, that is, for judgment maintaining it in possession of the 95 acre tract, and ordering plaintiffs to assert their claims of ownership within 60 days of the judgment.
Plaintiffs contend, however, that the trial court erred in admitting evidence offered by La Bokay tending to show the condition of fences and markers on the property subsequent to September 30, 1971, that being the date on which this suit was filed.
We agree that the issue presented in this case was whether plaintiffs or defendant possessed the subject property for at least one year prior to the filing of the suit, and that ordinarily evidence tending to show the condition of the property after the suit was filed would be immaterial. In this case, however, at least two witnesses testified that the condition of the fences and the markers on the property were substantially the same in 1975 as it was in 1971. For instance, John Porcell, a witness called *596 by plaintiffs, testified on direct examination that the fence was the same at the time of the trial as it had been during the past five years. He stated, "I don't see any difference, not a bit." And, Daniel Crump, another witness called by plaintiffs, testified on direct examination that he found the property on the day before the trial to be in generally the same condition that he had known it to be during the past four or five years. In view of that testimony, we find no error in the ruling of the trial court admitting evidence which tends to show the condition of the property after the suit was filed.
Since we have concluded that plaintiffs have not been in possession of the 95 acre tract involved here for the period of time specified in LSA-C.C.P. art. 3658, it necessarily follows that plaintiffs are not entitled to recover damages from defendant, at least at this time, for the cutting and removal of timber from that 95 acre tract. We recognize, however, that they may be entitled to recover damages if they institute a petitory action, as the judgment allows them to do, and are successful in establishing their ownership of the property which is in dispute.
The judgment rendered by the trial court made no mention of plaintiffs' claim for damages for the cutting and removal of timber, and under some circumstances the failure of the court to specifically determine that issue would be construed as a rejection of that part of plaintiffs' demands. In this case, however, the trial court should not consider and determine the issue of damages until the parties at least have had an opportunity to assert their claims of ownership. We thus do not construe the judgment rendered here as preventing plaintiffs from asserting their claim for damages in some other proper proceeding.
Our ultimate conclusion is that the trial judge was correct in maintaining La Bokay in possession of the 95 acre tract in dispute here, and in ordering plaintiffs to assert any title they may have to that tract within 60 days after this judgment becomes final.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.